We will now call Case 20-10268, Hall CA-NV, L.L.C. v. Old Republic National Title Insurance Company. Mr. Meshes, we'll hear from you. May it please the Court, Benjamin Meshes on behalf of the Appellant Hall. This title insurance case turns on the following question, What risk did Old Republic agree to ensure when it issued the policies to Hall? And the answer, under the plain language of the policy, is the title and priority risk that existed when the policy issued. And that risk was pre-policy work. All signs point to coverage here for that risk. The text, and also significantly, Old Republic's conduct. Old Republic had full knowledge of the risk when it issued the policy, and it assumed coverage. So what, I want to just clarify, what's that issue in this case? Am I right in understanding that this is about a statutory lien for services, labor, or material arising from construction? That is correct, Your Honor. It's a statutory mechanics lien under both California and Nevada lien statutes. Because I'm reading from coverage risk 11A. Right. Why did this case not completely turn on the 11A provision, and specifically the fact that that was deleted from the policy? For a couple reasons, Your Honor. First of all, 11A was deleted in place of it was put into a provision, the endorsement 3206, which was intended to expand coverage for prospective events. And second, when 11A was deleted, the insurance company, none of the parties deleted the broader provisions that covered risk, which would be covered risk two, which covers any lien, encumbrance, or defect in title, and covered risk 10, which governs proper priorities, disputes with respect to, again, any lien. So those broader provisions of coverage apply here. And just because the parties chose to eliminate a more specific grant of coverage did not eliminate those broader provisions of coverage. And here- I share Judge Ho's confusion on that point, because it would seem to me that the purpose of eliminating 11A, and then dealing with post-policy date liens was to sort of deal with those through a more specific endorsement. I think it's 32-06. I thought that was the point of that sort of change to the policy. And I thought that that's what the amici are telling us as well. And the amici, you know, wrote it, wrote the policy. So why aren't we talking about whether the 3206 endorsements cover these liens? The reason- I'm sorry, Your Honor. That's my- Junkin, I'm sorry to interrupt there. The reason we're not talking about the 3206 endorsement is because that provision governs prospective covered risks, i.e. those that do not exist at the time the policy issued. And they exist to expand the coverage date. But here, two things happened when 3206 was adopted. Number one, the parties kept in place the broad grants of coverage under Covered Risks 2 and 10. And number two, instead of expressly excluding mechanics lien coverage, which is an option also under the pre-printed forms that the title insurer has at its disposal, it did not issue an exclusion. And in fact, that was on their due diligence checklist was to do so. How did the parties allocate the risk here? Hold on. I take the title company's position to be that 11A is written so specifically to cover fact patterns like this case that essentially your reading of 2 and 10, if it's correct, would render provisions like 11A surplusage. They specifically call it superfluous, I think, on footnote 13 of their brief. What is your response to their surplusage argument? Because candidly, apologies if I missed it, I didn't see you guys in your reply brief engaging with the title company on their surplusage argument. All right, and there's not a surplusage problem. Let me clarify. The reason is because 3206 is about prospective risk. For example, if a lien attaches after the policy date, then 3206 applies. So it's intended to address an entirely different risk. Let me give you an example that may be helpful. The law in California and Nevada is the lien attaches when the work is performed, and that lien risk exists at the time of the coverage here. But in other states, there actually are provisions that mechanics liens have priority no matter when they arise, no matter when the work happens. So 3206 is designed to address that. It's designed to address situations where other types of liens emerge on a post-policy basis, for example, a flowage easement or a tax easement or a tax attachment as well. I'm sorry, where is this in your reply brief? No, what I'm trying to explain under 3206 where we're arguing about 3206. And our main argument here is it's designed, the reason it's not surplusage, your honor, is because it's designed to address an entirely different set of risks. And we make the argument that they didn't include the exception or exclusion that was available to them under the terms of the policy. And what the district court did here, importantly, and there's a footnote in his opinion where it concludes that 3206, appropriately so, we believe, is not an issue in this case. That we're not seeking coverage under 3206. And Oprah Republic does not dispute that. What the district court's ruling turned out... Right, I don't mean to repeat myself, but their position is, of course, that 3206, it's not that it's the source of coverage, it's that 11A is designed to deal with this situation. You all acknowledge that 11A has been deleted. Oprah Republic's problem is your reliance on 2 and 10 essentially ignore 11A. 11A is a very specific provision that seems to cover not only this lien, but the timing that you're talking about. And so what is left of 11A? That's what I'm not understanding and I didn't see in your reply brief. I'm trying to understand what you're saying here. I'm not getting why, under your reading of 2 and 10, 11A basically doesn't do anything. So the elimination of 11A, there are three reasons why I don't think it does anything here. Number one, it was replaced by 3206, which was designed to address an entirely different risk than we're talking about here. It is designed to address prospective title risk. And here, what we're talking about is a retroactive title risk because these liens existed. 11A specifically talks about work contracted for or commenced on or before the data policy. As well as there's 11A2, which talks about work that started after. It specifically contemplates this kind of work where it was done before and you want to use the first fade rule and all that. So help me out here. How are you not rendering this surplusage? Well, I don't believe it. The other reasons why it's not rendered surplusage are, it is certainly possible to have a situation where multiple provisions of coverage provide coverage. And I think that's the case here. Because we have, in addition to 2 and 10, which refer to any lien, and 10 that refers to a priority dispute with respect to any lien, you also have the policy, the decision by the Oval Republic not to issue an express exclusion. But even if we were to accept that 2 and 10, let's just, for purposes of conversation, 2 and 10 are ambiguous. I'm not saying they are, but let's just pretend. 2 and 10 could be read your way. It could be read the other way. But then you've got 11A that seems to be quite specific about mechanics liens and quite specific about work starting before or after. And you all talk and you discuss what kind of policy you want, and they specifically offer you 2 and 10, but also 11. And you say, we want 2 and 10, but we don't want 11A. We want to delete that. And our point, Judge Ho, is that the elimination of 11A is not viewed in a vacuum here. And that is because, even apart from the other provisions, accepting the premise of ambiguity, perhaps, under 2 and 10, is because it exchanged for a provision that actually expands coverage going forward under 3206. But it doesn't eliminate the retroactive coverage grants under 2 and 10. And I would suggest 2 and 10 are not ambiguous. And the reason for that is because lien attachment, lien creation have established meanings under the real property law in Nevada and California. And they're driven not only by the first paid rule that you mentioned, Your Honor, but they're also driven by the fact that under those statutes that a lien attaches at the moment the work begins. Right, but you're acknowledging, I assume, that 2 and 10 are specifically limited to... Right, whereas 11 is specifically after date of policy. We absolutely recognize that, Your Honor. And you're taking 2 and 10 and not just looking at the text, but you're invoking another body of law, the first paid rule concepts. And what I'm wondering is, why does 11A not prevent you from that invocation? I don't think it does so at all because the plain and ordinary meaning of attachments of a lien or creation of a lien giving rise to that lien is just ordinary contract interpretation principles. And you don't have to even look to the first paid rule to get there, Your Honor. And that's because under California law and under Nevada law, when the work begins, that's when the lien arises, that's when it attaches. We cite cases on page 31 of our brief, Enri Bedera and other cases from California that invoke that principle as well. And those are backward looking risks. Those risks existed at the time the policy was issued. And of course, Old Republic knew that. I guess the way I think of title insurance, and pardon me, I'm certainly not myself an expert in this area, but just think of title insurance as you buy a piece of property and you want the title company to do a search to see what's encumbering at that time. And I think you would concede this lien did not exist at the time of the title search. I get your point that it should relate back. But again, 11A seems to cover that distinct policy of not just at the time of search, but later in time. And you all deleted 11A. So I don't agree with that, Your Honor, as both a factual and legal matter, respectfully. And the reason, I do think the lien existed because under California law, under Nevada law, a lien attaches. And this is the case I was mentioning. Let me be clear though what we're talking about. The word existing, I think, can be ambiguous, I suppose. At the time they did the title search, on the date of the policy, was the lien on the record? I assume not. It was not on the record, but I think it can relate back. But more than that, Your Honor, our argument is more than that. Yes, it can relate back. And there was a priority risk that existed at the time of the policy. But in addition to that, the lien attaches in the contractor's benefit at the time the work is initially done. That's what the California and Nevada statutes and the cases we cite provide for. And that makes perfect sense because otherwise there would be no NCOA lien coverage. I get that it makes sense that 11A covers that situation. That's what I'm trying to get at is 11A seems to contemplate this very fact pattern where you have, as you said, this is specifically available after the date of policy. And it specifically applies to work contracted for commenced on before the date of policy. And so 11A would cover it. It's just that you guys deleted it. I think that the way that argument could work, Your Honor, is if Old Republic had included the pre-printed available exception or exclusion for mechanics lien coverage. If they delete 11A, add 3206, and then add in the express exclusion, which then trumps 210. But they did not do that. They knew of this risk and instead what they chose to do was shift that risk straight to the borrower here. They entered into an indemnity agreement, understanding and recognizing that they could face a title risk themselves. And so if they face that loss, who are they going to turn to? They're going to turn to CalNEVA here, the property developer. And I think with respect to your question, one of the important points here is that this title policy, you're right, it is backward looking, but it's not only about the public and the public. That really speaks to enforcement of the enforceability liens, which is a distinction that we draw. But it is really more than that that's being covered. There are inchoate risks that are being covered that don't show up in the public records. And that's reflected by cover risk 14, which distinguishes explicitly between liens that attach or created or those that are filed on the record. There's other textual evidence, Your Honors, on that point as well. Well, again, 14, just to be clear, is one of those provisions that are specifically after the data policy. Yes, I completely agree. But the point I'm trying to make, just to clarify, Your Honor, is that the policy recognizes the distinction between enforceability of a lien through filing it in the public records and liens that have attached or been created, but have not yet been filed. And I think that's exactly the risk that 2 and 10 reflect. And frankly, exclusion 3B does that as well. It recognizes there can be liens that are actually not in the record. Not in the public records, but are subject coverage because they're in collate. There's an encumbrance or title risk that exists at the time. I have two questions, if you don't mind, before you run out of time. Or you can have more time. They should be easy questions if you know the answer. What's your best evidence that Penta was not paid in full for the startup work? The best evidence we have is the deposition testimony from, Your Honor, I'm going to get you the exact record site, if that's okay. The best evidence we have on that score is testimony from a... He specifically stated that there was a 10% retainage. Mr. Meshes? Held back. Mr. Meshes? I'm afraid you cut out there for a second. I think... Oh, I'm sorry. No, no, no, no, you're fault. It's the technology, unfortunately. Apologies for that. Can you just repeat your answer? I want to make sure... Yeah, absolutely. I'm very sorry, Your Honors, with the technology issue. So our best evidence, Judge Clement, is on page 4564, which is testimony from an old Republic corporate rep who indicated that part of the 10% retainage, which was held back from payments on a pre-policy basis, would be paid out of the final applications for payment. And so that's... That's the retainage, but that's not the expense that was incurred with the pre-start work. That's it. The retainage is different. I agree, retainage is different, but I think it shows that there's at least some still unpaid amounts for those services. And then I would also say... I know, but are you restricting it to the 10%? My question has to do with the pre-start work before the title policy was issued. Was that unpaid or paid? It's not fully paid because there is a 10% retainage. That's the basis of our position. You can argue about that. But anyway, my second question is, would Penta have had a lien if Hall had disbursed the entire $29 million instead of stopping the disbursement? If they disbursed the entire... I think in that situation, there would not have been a... Potentially would not have been a loss under the policy, depending on how much overage there would have been. So because those facts didn't play out like that, we don't know. But that really turns on not whether there's a lien, but whether there might have been a loss. OK, thank you. Thank you, Mr. Meshes. You've reserved time for rebuttal. Mr. I apologize if I don't pronounce this correctly, Kulaluri? Perfect, Your Honor. Ah, look at that. May it please the court. I think the flaw in Hall's argument and Mr. Meshes' argument today highlights it, is that it seeks to equate the risk that a later file and a rising mechanics lien may relate back to a time that's pre-policy and pre the filing of the insured mortgage. They tried to equate that to an existing lien or encroachment exit on the date of policy. And those are not the same things. The risk that Mr. Meshes is talking about is what the folks in the title industry and construction industry referred to as a broken priority list, broken priority risk. Ah, and it's obviously can be quite common in construction lending cases when the contractor or some contractor has started work before the insured mortgage title policy is issued. Whether or not that later arising mechanics lien was ultimately covered by policy depends on the terms of the policy. And I think Judge Ho has focused in on this quite correctly, which is the general coverage provisions, including 2 and 10 of the loan policy, speak explicitly to liens or encumbrances existing as of the policy date. Moreover, there is a general exclusion under 3D for liens or encumbrances that arise after the policy date that are created or attached after the policy date. So, yes, to answer Judge Ho's question directly, covered risk 11A explicitly and specifically would cover this situation. That is what it was intended for. And the general insuring provisions are not as recognized by the Seventh Circuit and BB syndication and the Eighth Circuit and Chicago title. You have to have a separate endorsement or a separate insuring provision in order to get coverage for a mechanic's lien that arises after the fact. Mr. Cololuri, is this why 11A was deleted and the endorsement 32-06 was negotiated? That is exactly right, Judge Dunn. Explain to me how that would work. How would 32-06? I understand nobody's saying that the liens are covered under 32-06. How would 32-06 work in a situation such that a lien would be covered under the insurance policy? Certainly, Your Honor. And just by way of background there, that is exactly what happens when presented with a broken that the title insurer determines is too great for it to undertake. What will happen, and it happened in this case, is that the more or less unlimited mechanic's lien coverage of 11 is deleted, and 32-06 is substituted in its place. And 32-06 requires that only mechanic's liens for services that were designated in a request for an advance on the construction loan and actually dispersed by the lender will be covered for mechanic's liens that arise prior to the date of coverage. And as you probably saw, that date of coverage gets moved, what they call a date down every time a request for this additional advance is made. What that is intended for is to cover primarily the risk of either a developer or a contractor who does not, in fact, get all the liens paid off, notwithstanding that the lender has made the disbursement. And that is obviously a major risk that occurs in construction lending as well. There's always time lag between when requests for advances are made and additional work is being done. There's more time lag in getting lien waivers from folks. And there are certainly developers and prime contractors who fail to do what they're supposed to do in making sure that with that advance that they get from the lender, that the liens are all paid off. So, yes, Old Republic still has mechanic's lien risk that it insured under the 3206. However, it's not the mechanic's lien risk that we have here. And I think it is undisputed that 3206 coverage does not give Hall what it's looking for. They did originally sue claiming that they were entitled to coverage under 3206. They answered interrogatories indicating that. But when the summary judgment motions were made, and we pointed out there was no coverage under 3206, that they took the position, well, we're not even speaking that. In fact, it's irrelevant to the case. It's not irrelevant to the case. It simply doesn't provide them the coverage that they want. And the effort to create this, there's a distinction, and 3206 provides prospective coverage that is greater and doesn't take away retrospective coverage under 2100, to construe the agreement in its entirety. That means all the provisions so that none should be surplusage. Another subsidiary canon of that is that the specific controls over the general. And here we have, in fact, the parties with a fairly sophisticated, delicate balancing of what will be done with mechanics liens that are going to arise because this is a construction loan. And they have set it up this way, contracted this way explicitly, because there was broken priority risk that the whole republic was not willing to undertake. And Hall's argument is, well, let's just ignore all that. Let's go back and pretend. And they have yet to be able to explain why that does not make 11a or a substitute in this case, 3206, pure surplusage. So the structure. What was all republic contracting to pay for? Well, as I mentioned a moment ago, Your Honor, there is mechanics lien risk for that is covered by 30 other mechanics. It could be the Penta liens as well. Penta's lien encompassed all its subcontractors as well. They were able to file omnibus Penta lien at $7.9 million was not just Penta included subcontractors. And if with that funding by Hall of the loan advance from it to Calneva to Penta didn't get down to the subcontractors and the subcontractors retained a lien for some reason because of that, that is what 3206 was intended to do. But it requires that the lender has to fund. And because these liens are because the lender didn't fund.  Are you saying nothing? Excuse me, Your Honor. Old Republic is paying nothing. What are they paying? At this point, right, there's nothing owed because all of this is based upon what Hall declined to fund. The entirety of it. And let me jump to that for a moment because that was a question you asked Judge Clement about. Is there any pre-policy work that is included in that lien amount? And the short answer is no. We, the judge quoted the summary judgment evidence that we put in the record from both the developer and from Hall itself that those liens were those that work pre-policy was paid in full. That was a central feature of our argument in summary judgment in under 3D in particular. But it's also goes to the is there even an insuring clause that covers it? It was not as I think referenced in Hall's brief, a passing reference that we made in our brief. It was the argument and Hall recognizes the argument. Their reply brief on their summary judgment explicitly recognizes it and they try to make a legal argument why that is wrong. But what they don't do is say that that was disputed fact. There is no argument in their summary judgment that they disputed that fact. There is no citation to any evidence in their argument that they disputed that fact. What they do now on appeal is go back and scour the summary judgment record. And as it turns out, they put in the entire deposition of Scott Geiser, one of our corporate reps. And without citing to what they now cite the court to, they argue there is a reference in there, which frankly is not very clear at all and not something he was designated to talk about saying that they think maybe there was retainage withheld out of that pre-policy payment. But the court, the district court is not required to go scour a 200-page deposition looking for evidence of a fact dispute that Hall itself does not even tell the court existed. This is a bit of a Hail Mary on appeal to come back and say, well, even if you agree with Old Republic that only, and the district court, that only pre-policy work could possibly be an issue for a lien existing at the time, then, you know, we have evidence of that. And they do not. They never, never tried to even raise that issue. Well, that 10% retainage is not appropriate here. Correct. As best one could try to read Mr. Geiser's testimony, he's talking about what's under the GMP contract is a construction contract, guaranteed maximum price that it's referred to at a 10% retainage. Doesn't reference anything about what was paid. Matter of fact, Mr. Geiser disavowed knowing when, how the pre-policy work was paid for. And all of that is important only really if you get past the first argument, which is that this was simply not a lien or encumbrance existing at the date of policy. Let me ask you about that, Mr. Collaluri, because I detected in your brief, just maybe a little discomfort with the district court's reasoning, obviously not with its result. But I mean, and, you know, just to be candid, are there parts of the district court's reasoning that you wouldn't defend on appeal or you wouldn't advocate to our court that we reproduce it in an opinion? I'm just, you know, I'm just being honest with you. I thought I read the district court's rationale. I followed some of it. Some of it I didn't. Can you help me with this? Certainly, your honor. And I think while respectful, I tried to be explicit about what we did and did not agree with in the district court's opinion. There is a district court treated exclusion 3A in front of 3D and did most of its analysis about pre-policy work versus post-policy work under 3A. I don't think that's really the marker exclusion 3A. I think the district court correctly concluded 3A would exclude coverage even if it was available under the insuring clauses. But I don't think the way the district court approached that is accurate. In other words, if we were looking at 3A, we would be talking about whether the liens were caused or suffered or all these buzzwords that other courts have interpreted. Lots of circuit decisions on this issue. That's what we're looking at there. You do make an argument on that. That's fine. But the 3D part, which is related to the deletion of 11A as I understand it, is a standalone ground for affirmance. Is that correct? Correct. And my quarrel with the district court's reasoning there is I think the judge applied 3D correctly in reaching the correct result. But there's two parts of the analysis. The first part is, is there even coverage under one of the insuring clauses? Judge Starr said there's potentially coverage because there was work done sort of adopting a version of the argument made by Hall. But that that would be excluded by 3D because that work didn't form the basis of the lien, only work done after the policy did. And so I agree with the conclusion on 3D. I disagree that there's a coverage, there's an insuring clause that actually even implicates coverage. Those two arguments from our perspective are very much related. There may be daylight between an insuring clause for a lien existing at the time of the policy and a 3D exclusion for a lien created or attaching after the policy. But in this instance, we think that analysis should be the same. The judge found there could be coverage under the insuring clause. And so he relied on 3D to get to the point that I think is correct under either of those arguments. And the reason I think that's correct under either of those arguments is beyond just the policy language itself and the rules of construction, which the court has already noted. There is clearly a distinction between whether a lien exists and whether it's given. And the question here is, did the lien exist at the date of policy? And the case law is clear. To get a lien, you have to have lienable work that's not paid for. And ultimately, you have to file a notice of lien. And if you fail in any of those, including the filing, you don't have a lien. Now, Hall says, well, even though there was no filing of a lien, and even though that work was paid off that was done pre-policy, the fact that the company had to use the relation-back priority doctrine to prime their later liens means that there was, in fact, an existing lien or encumbrance under the policy at the time. And we disagree with that. There's no case that's ever held that. The Captiva case out of the 8th Circuit makes clear that relation-back is for the benefit of the contractor and it is not an overlay that you could simply put in a policy and say that now creates a lien that didn't exist. Well, I guess you could contract for that, right? And in fact, that's what 11A does. That's exactly what 11A is intended to do and does do. 10 do not. And this is, I mean, the mechanics lien is obviously an area where this comes off often, but it comes up in other areas with municipal assessments and taxes. And we've cited those cases in our brief that say the fact that the work might have been done for an assessment or that the taxes were set in motion, and even one of the cases say, even though it's a virtual certainty that that's going to get assessed, if it's assessed post-policy, it is a post-policy matter and not covered by the policy. And the argument that Hall is advancing is it would completely upend all the title insurance law out there on this point. It is, frankly, sort of radical. And I'll give the court a hypothetical. In most states, or certainly many states, including what we're dealing with here, the relation back doctrine, the contractor is not necessarily limited to work that that contractor did before the mortgage was done. It includes, they can tag along to some other contractors if it's the same work of improvement. So under Hall's analysis, there's pre-policy work. It's been paid off entirely. No question those folks have no lienable work at that point at the time of closing. But a year down the road, some subcontractor who doesn't get paid can relate back to that event of the pre-policy work having been done. And Hall's argument is, even though that person had nothing to do with the project at the time, had done no work, as of the date of policy, those folks had a lien on the lien. That is Hall's position. And that simply cannot be, that flies in the face of all the case law, the language of the policy, and simple logic. That person didn't have a lien. They got a lien later, and it was allowed to relate back, which is what 11A is designed for. And that really would swallow 11A too, right? Clearly. The whole thing would just be completely surplusage. I want to follow up on something. I think your brief talks about 3206 and the deletion of 11A being specifically negotiated. Pardon my ignorance of the record. Is there anything in the record that talks about whether you all, whether the title company offered 11A, and Hall said, no, I don't want to pay for that 11A coverage. Go ahead and delete it. Or was 3206 imposed on Hall? I'm not saying it's dispositive. I'm just curious about this. It's more to the latter, your honor. What the record shows is that once the discussion started, and Hall conducted these discussions through their outside real estate lawyer, the underwriting folks at Old Republic decided that given the broken priority risk, they would only offer what they called in their internal email incremental coverage. And that was okay by the real estate lawyer for Hall that that was acceptable. So you all were uncomfortable with 11A given the facts of this particular transaction. Correct. There was clearly a broken priority risk and so we were uncomfortable. And Hall obviously agreed to the policy. And with that, I see that my time is up. Thank the court. Thank you, counselor. Mr. Measures, I believe you have five minutes reserved. Thank you, your honors. And I would like to cover three points briefly in rebuttal. First is this discussion about 11A. Second is the district court's interpretation of the two exclusions. And finally, 3D. Let me begin with 11A because I think there's some important context missing in my friend's argument on the other side. And that is when 11A was deleted, I believe you can only assume an intent to exclude these prospective employee lien risk if the following is true. If there was an exclusion for a mechanics lien, that is something that was absolutely discussed on a pre-policy issuance basis by Old Republic. It was on their due diligence checklist, but they made the decision not to include it. And that is a pre-printed construction loan policy issued by the title insurance company in all kinds of cases that they chose not to do it. What did they do instead? They issued an indent. They agreed to an indemnity between Old Republic and the property developer CalNeva. So they knew they assumed there was some going some sort of insurance risk here and how they were going to allocate that risk was turned to the borrower here. And their underwriting absolutely focused on this pre-policy work. So there's nothing radical at all about our position here. And one of the reasons is this is a very unique set of negotiating circumstances and context. It doesn't come up in any of the cited cases. And I would just say on the superfluous point, I don't think you would read insuring clause 10 as surplusage just because insuring clause number two grants coverage as well. And I think the same thing works here. And it's particularly so because of the unique context of this policy. Number two, turning to the district court's interpretation. There was some discussion, I believe, from Judge Duncan about what what might might be flawed in the district court's opinion. And I think what is flawed is under both 3A and 3D, the idea that paid or unpaid matters. It does not. The language of, for example, 3A has to do with conduct by the insured is an intentional or inequitable conduct. That's the question, not whether the worker is paid or not. And so we fundamentally disagree that as a textual matter. And frankly, that's exactly what all of the courts from the from the sixth, the seventh, eighth and 10th circuits, and even this court in Deviltree understood that language to be focused on whether there's intentional and equitable misconduct. And that's how the answer to 3A turns out. And I think we have a clear, clear winner there. And that's because there is no evidence of intentional misconduct in our part. Third, there was some discussion towards the end of Old Republic's argument about the notion of 3D being a bar to coverage. And I think their argument fundamentally misunderstands what 3D is about. 3D is designed to address that make clear prospective risk is not covered, but retrospective risk is. And it talks about whether or not the lien has attached or has been created. And under California Nevada law, it is clear we cite cases on page 31. When the work is commenced, that's when the lien attaches. That's when the right arises to enforce that lien. What they are talking about is something entirely separate, which is the recording of the lien. That is an enforceability question. It is a procedural matter. It must happen before one can get the benefits of the lien in court, but it does not determine whether it's attached or created. And in fact, one of the cases they cite makes clear that an inchoate lien risk is a preexisting encumbrance on the property. That's the eighth service decision in Captiva. So their argument really is divorce in the policy language. Policy in 3D does not say the lien has to be recorded. It does not refer to a recorded lien. It refers to an attached or created lien. And the policy further recognizes the distinction between liens that have attached and those that are created when there's a discussion, as I mentioned earlier, when a judge host questions covered risk number 14 and also exclusion 3B. 3B explicitly recommends that there is coverage for inchoate risk. That is risks that are not recorded in the public records, but emerge later on or are not disclosed. Here, none of that's in play. This was fully disclosed. They underwrote this exact risk. And how did Paul try to deal with this? It took steps to assure that risk would not come forward by entering into a subordination agreement that ultimately turned out to be unenforceable. That is negligent, non-intentional conduct under section or exclusion 3A. And for that reason, we request the court reverse the district court's opinion. Thanks to you both for a very helpful argument. We have your arguments now and the case is submitted.